# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CONRAD RAYMOND GARDNER,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2015

No. 323883
Oakland Circuit Court
LC No. 2013-247342-FC

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction, after a jury trial, of first-degree criminal sexual conduct (sexual penetration with person under 13 - digital penetration) (CSC-I), MCL 750.520b(1)(a) . The trial court sentenced defendant to 25 to 70 years' imprisonment, with credit for 28 days served. We affirm.

I

This case arises out of defendant's sexual assault of his 11-year-old stepdaughter, AF, and a confrontation involving AF, her mother SF, and defendant. In the early hours of April 9, 2013, AF was asleep in her bedroom in the family home. At approximately 2:00 a.m., SF discovered defendant in AF's bedroom "on his knees" with "his hand under the covers right near [her] genital area." She testified about the implausible explanation defendant provided for being there and AF's "frightened" demeanor in this situation. SF testified that she asked AF "what had been going on" and, over defense counsel's objection, testified that AF told her "I'm sorry mom. I wanted to tell you. He's been doing that for a long time."

SF called the police and AF was taken to CARE House to be interviewed by a therapist. During the interview, AF said that defendant had only touched her leg and made her feel uncomfortable. After the interview, no charges were brought against defendant and AF saw a therapist for six weeks. Eventually, AF disclosed to her therapist and SF that defendant had been sexually abusing her over the course of several years. After AF disclosed these additional details, SF contacted the police again and brought AF back to CARE House for another interview with a therapist. During the second interview, AF repeated sexual abuse allegations.

-1-

The prosecutor subsequently charged defendant with CSC-I (sexual penetration with person under 13 - digital penetration), MCL 750.520b(1)(a), CSC-I (sexual penetration with person under 13 - cunnilingus), MCL 750.520b(1)(a), and CSC-I (sexual penetration with person under 13 - fellatio), MCL 750.520b(1)(a).

After the close of the prosecutor's case, during which both AF and SF testified, defense counsel moved for a directed verdict, which the trial court denied. The jury found defendant not guilty of CSC I (sexual penetration with person under 13 – cunnilingus) and CSC-I (sexual penetration with person under 13 – fellatio) but guilty of CSC-I (sexual penetration with person under 13 – digital penetration),

II

Defendant first argues that the trial court committed error by admitting prejudicial hearsay evidence at trial. Defendant contends that SF's testimony regarding what AF told her (i.e., "I'm sorry mom. I wanted to tell you. He's been doing that for a long time.") amounted to hearsay. As a result, defendant argues that the trial court committed error by admitting it as an excited utterance because it did not qualify under this hearsay exception. Similarly, defendant argues the statement was also inadmissible as a prior consistent statement, which improperly bolstered AF's testimony. We disagree.

To preserve an evidentiary issue for review, the party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defense counsel objected to SF's testimony about AF's statement on "hearsay" grounds. The prosecutor argued her testimony was admissible as an excited utterance, and the trial court admitted it on that basis. However, defense counsel never argued that the statement was also inadmissible as a prior consistent statement. As a result, defendant's hearsay argument relating to the excited utterance is preserved, but the argument relating to prior consistent statements is not. See MRE 103(a)(1).

We review preserved evidentiary issues for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Preliminary questions of law, such as whether a rule of evidence precludes admissibility, are reviewed de novo. *Lukity*, 460 Mich at 488. The existence of a startling event or condition is a question of fact that a trial court must decide before it may admit a statement under MRE 803(2) as an excited utterance. *People v Barrett*, 480 Mich 125, 133; 747 NW2d 797 (2008). A "trial court's determination that a statement is admissible as an excited utterance is given wide discretion." *People v Smith*, 456 Mich 543, 552; 581 NW2d 654 (1998). We review unpreserved evidentiary issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible unless it falls under an exception provided by the rules of evidence. MRE 802.

## A. EXCITED UTTERANCE

Defendant contends that AF's statement did not qualify as an excited utterance because she was asleep during the sexual conduct, and thus, did not observe anything that would constitute a "startling event." As a result, her statement was not made in response to, or under the continued excitement of, a startling event as required by this hearsay exception. We disagree.

An "excited utterance" is not excluded by the hearsay rule, even if the declarant is available to testify. MRE 803(2). An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). The rule allows hearsay testimony to be admitted that would otherwise be excluded under the rationale that a person who is still under the "sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *Smith*, 456 Mich at 550, citing 5 Weinstein, Evidence (2d ed), § 803.04[1], pp 803-819.

A statement will be admissible under the excited utterance exception if (1) there was a startling event, and (2) the resulting statement was made while under the excitement caused by the event. *Smith*, 456 Mich at 543. Plus, the statement "must relate to the circumstances of the startling occasion." *People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988); see also *People v Kowalak (On Remand),* 215 Mich App 554, 557; 546 NW2d 681 (1996). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious reflection." *Smith*, 456 Mich at 551. The key inquiry is whether the declarant "was still under the influence of an overwhelming emotional condition" at the time the statement was made. *Straight*, 430 Mich at 425.

AF's statement was an excited utterance, resulting from the startling event of waking up to discover that defendant had been in her room sexually assaulting her and that SF learned about the abuse for the first time. AF testified that she was repeatedly subjected to sexual contact by defendant over the course of several years. Defendant had threatened to kill her family if she told anyone about his regular visits to her room to sexually abuse her, and she testified that she regularly lost sleep because of fear that he would come again. Although AF was asleep during the beginning of the sexual assault, when she was awakened by SF yelling, she became immediately aware of what was happening based on prior experience. Being abruptly startled from sleep to discover that she had been sexually assaulted would have been a sufficiently startling event. However, because of defendant's prior threats against her family, the trial court could have concluded that the fact that SF discovered the abuse exacerbated the stress. The yelling between SF and defendant also added to the stress. See *People v Layher*, 238 Mich App 573, 583; 607 NW2d 91 (1999) (concluding that a sexual assault is a startling event); *Kowalak*, 215 Mich App at 558 (concluding, "[i]t is hard to conceive of a more startling (or terrifying) event with which one might be confronted than a serious death threat."). In this case, AF waking up to discover that defendant had sexually abused her and that SF discovered the abuse was a startling event.

AF made the statement while still under the excitement caused by the startling event. SF testified that just before AF's statement, AF was crying and seemed "disoriented" and "shaky." SF's testimony about AF's demeanor and the two minutes that had passed between when SF walked into the bedroom and when AF made the statement demonstrates that AF made the statement while still overwhelmed by the stress caused by the event. See *Smith*, 456 Mich at 545, 552-553 (concluding that a statement made by a 16-year-old victim to his mother 10 hours after the sexual assault constituted an excited utterance in light of the circumstances preceding and surrounding the statement, which demonstrated that the victim was still overwhelmed by the stress of the event); *Kowalak*, 215 Mich App at 557 (concluding that a statement made by an adult victim approximately 45 minutes after the startling event constituted an excited utterance under the circumstances); *People v Draper*, 150 Mich App 481, 486; 389 NW2d 89 (1986), remanded on other grounds 437 Mich 873 (1990) (concluding that a statement made by a three-year-old victim one week after a sexual assault constituted an excited utterance under the circumstances). Likewise, there is nothing in the record that suggests that AF had an opportunity for conscious reflection during the short interval between the event and her statement, such that AF was no longer overwhelmed, or had the capacity to fabricate her statement. Similarly, the statement was clearly related to the circumstances of the startling occasion. Thus, the trial court did not abuse its discretion by admitting AF's statement to SF as an excited utterance. See *Straight*, 430 Mich at 425.

## B. PRIOR CONSISTENT STATEMENT

Defendant argues, for the first time on appeal, that AF's statement was also inadmissible as a prior consistent statement because it improperly bolstered AF's testimony. This issue was not properly preserved at trial with an objection to admit the statement on this basis, and defense counsel does not adequately brief this argument. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (holding that failure to brief a question on appeal is tantamount to abandoning it). Additionally, defendant cannot establish plain error. The declarant (AF) testified at trial after defense counsel had made express and implied charges of recent fabrication. She was subject to cross-examination, the offered statement was consistent with her challenged in-court testimony, and she made the statement prior to the time the supposed motive to fabricate arose, making this a valid prior consistent statement. Thus, had the trial court admitted the statement as a prior consistent statement, the decision would not have been plainly erroneous. See *People v Jones*, 240 Mich App 704, 709; 613 NW2d 411 (2000).

III

Defendant also argues that the trial court erred in denying his motion for a directed verdict. Defendant argues that to constitute CSC-I, the offense must be committed by "an individual 17 years of age or older." He claims that the prosecution submitted no evidence that indicated defendant's age was 17 or older at the time of the alleged offenses or at the time of trial. Accordingly, defendant argues that at the time of the motion for a directed verdict, the prosecution did not prove beyond a reasonable doubt every element of the crimes charged. As a result, defendant argues that the trial court violated defendant's due process rights when it denied that motion. We disagree.

We review a trial court's decision on a motion for a directed verdict de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

No person may be deprived of life, liberty or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. In criminal cases, due process requires the prosecutor to prove each element of the charge beyond a reasonable doubt. *Apprendi v New Jersey*, 530 US 466, 477; 120 S Ct 2348; 147 L Ed 2d 435 (2000); *People v Eason*, 435 Mich 228, 238; 458 NW2d 17 (1990).

In addition, a defendant may move for a directed verdict at the close of the prosecution's case and if the evidence is insufficient to support a conviction, due process requires that the trial court direct a verdict of acquittal. MCR 6.419(A); *People v Szalma*, 487 Mich 708, 720-721; 790 NW2d 662 (2010); *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998). When ruling on a defendant's motion for a directed verdict, the trial court must consider the evidence presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *Szalma*, 487 Mich at 721; *Lemmon*, 456 Mich at 634; *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). Circumstantial evidence and reasonable inferences drawn from that circumstantial evidence may be sufficient to prove the elements of the crime. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). The trial court may not determine the weight of the evidence or the credibility of the witnesses, regardless of how inconsistent or vague the testimony was. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Rather, questions regarding the credibility of witnesses are left to the trier of fact. *People v Peña*, 224 Mich App 650, 659; 569 NW2d 871 (1997), mod in part on other grounds 457 Mich 885 (1998).

The evidence presented by the prosecutor here, viewed in the light most favorable to the prosecution, could have persuaded a rational trier of fact that the essential elements of the crimes charged were proved beyond a reasonable doubt. Defendant was charged with three counts of CSC-I (sexual penetration with person under 13) based on the fact that AF was under the age of 13. MCL 750.520b provides, in relevant part:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age . . . .

AF testified that on numerous occasions defendant "put his finger in [her] vagina." She also testified that defendant "[p]ut[] his tongue on [her] vagina," and that on at least one occasion defendant had put his penis in her mouth. Her testimony, viewed in the light most favorable to the prosecution, could have persuaded a rational trier of fact to conclude beyond a reasonable doubt that sexual penetrations occurred. Additionally, AF testified that, at the time of trial, she

was 13 years old and that, during the sexual conduct, she was between the ages of 8 and 11 years old. Her testimony, viewed in the light most favorable to the prosecution, could have persuaded a rational trier of fact that she was under 13 years of age at the time of the sexual penetrations. Because the prosecutor presented sufficient evidence of both essential elements that could have persuaded a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the crime, his motion for a directed verdict was properly denied.

Moreover, to the extent defendant argues that the prosecutor failed to present sufficient evidence to the jury to establish that defendant was 17 years of age or older for purposes of the mandatory 25-year minimum enhancement found in MCL 750.520b(2)(b), we disagree.[1] There was sufficient circumstantial evidence of his age for a rational trier of fact to conclude beyond a reasonable doubt that he was 17 years of age or older. The jury could consider their observations of defendant, who was in his early 50s at trial, as circumstantial evidence of his age. Additionally, before the motion for a directed verdict, SF testified that she married defendant in 2005, when AF was two years old. AF testified that defendant sexually assaulted her from the time she was 8 years old until she was 11 years old. If defendant was younger than 17 years old during that time he would have been between 8 and 12 years old when he married SF in 2005. The prosecutor points out in her brief that this "is not fathomable especially since the age of legal consent to marry in Michigan is 16. MCL 551.51." Additionally, AF testified that she had not tried to fight defendant off because he was "forty years older" than her and weighed "two hundred pounds." Based on this direct and circumstantial evidence, a rational jury could form a belief, beyond a reasonable doubt, that defendant was 17 years old or older at the time of the offense.

---

[1] In accordance with *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2160; 186 L Ed 2d 314 (2013), wherein the United States Supreme Court held that "a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense," the determination whether defendant was 17 years of age or older at the time of the offense was required to be submitted to the jury in order for defendant to be subjected to a mandatory 25-year minimum sentence. See also *People v Lockridge,* 498 Mich ___, 358; 870 NW2d 502 (2015). Indeed, MCL 750.520b(2)(b) makes the offender's age—under certain conditions—a factor that enhances the mandatory minimum term of imprisonment for the offense of CSC-I. Thus, as the trial court correctly recognized at the time of defendant's motion for a directed verdict, defendant's age was an element that was required to be proven beyond a reasonable doubt in order for the mandatory minimum to apply. See *Alleyne*, 133 S Ct at 2161 (". . .the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury."). The record reflects that the jury in this case was instructed that it had to find beyond a reasonable doubt that defendant was 17 years of age or older. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## IV

Last, defendant argues that he received ineffective assistance of counsel at trial. He claims that because the prosecutor's case against him depended almost exclusively on AF's credibility, it was crucial to his defense to investigate all available channels to impeach AF's testimony. As a result, when defense counsel failed to (1) investigate the records of the therapist whom AF saw regularly during the time leading up to her disclosure of sexual abuse, and (2) failed to consult with and retain an expert witness on the effect of repeated and suggestive questioning on children and the subsequent impact on the child's credibility, his performance fell below an objective standard of reasonableness. Additionally, defendant argues that there is a reasonable probability that the verdict would have been different but for counsel's failures. We disagree.

A timely motion for a new trial, which raises the issue of ineffective assistance of counsel, preserves the issue for appellate review. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Alternatively, to preserve the issue for appeal, a criminal defendant may request a *Ginther* hearing to make a separate factual record supporting the claim of ineffective assistance of counsel. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). In this case, defendant did not move for a new trial or request a *Ginther* hearing, and as a result, this issue is not preserved on appeal.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, the trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*. We review unpreserved claims of ineffective assistance of counsel, but review is limited to errors apparent in the record below. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990). Counsel's strategic judgments are afforded deference, *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003), but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation, *Wiggins*, 539 US at 521-522; *Trakhtenberg*, 493 Mich at 52-55.

The failure to reasonably investigate a case can constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. However, defense counsel has extensive discretion on matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Decisions on whether to retain witnesses, including expert witnesses, are matters of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that might have made a difference in the outcome of the trial. *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

## A. THERAPIST RECORDS

Defendant argues that the instant case turned on AF's credibility. In AF's first forensic interview at CARE house she said that defendant had only touched her leg and made her feel uncomfortable. After that interview, no charges were brought against defendant and AF saw a therapist for six weeks. After six weeks of therapy, and persistent questioning by SF, AF told her therapist that defendant had been sexually abusing her for several years. Because of the time that elapsed between the initial interview at CARE house and the sexual abuse allegations, and because of the change in AF's story, defendant argues that defense counsel was ineffective for failing to investigate the records of her therapist whom she saw leading up to her disclosure of sexual abuse. We disagree.

Criminal defendants do not have a general right to discovery. *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). Rather, defendants have the right to discovery provided by court rule. See *People v Phillips*, 468 Mich 583, 588-589; 663 NW2d 463 (2003). Under MCR 6.201(C)(1), a defendant has no right "to discover information or evidence that is protected from disclosure by constitution, statute, or privilege. . . . " Nevertheless, "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records." *Stanaway*, 446 Mich at 677. "In general, when a discovery request is made disclosure should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 677 (quotation marks omitted). A defendant must state a specific articulable fact to establish that the requested information is necessary to prepare the defense. *Id*. at 681. Only if a record contains such evidence may it be revealed to the defendant. *Id*. at 679. A generalized assertion that the records might contain inconsistent statements by the victim or might lead to exculpatory evidence is insufficient to warrant an in camera review. *Id*. at 680-681. Our Supreme Court has emphasized that "evidence protected by privilege should be provided to defense counsel only if the court finds that the evidence is essential to the defense." *People v Fink*, 456 Mich 449, 455; 574 NW2d 28 (1998).

At the preliminary examination, AF testified that after she initially denied that defendant had sexually touched her, SF, her father, and therapist repeatedly questioned her about defendant before she subsequently disclosed the abuse. Defendant argues that testimony "established a clear basis for requesting that the records be produced and reviewed." Without stating so directly, defendant implies that persistent questioning by SF and her father and six weeks of

discussions with a therapist could have inspired the potentially false allegations against defendant, and that evidence to support that theory may be contained in AF's therapy records. However, this claim is purely speculative and defendant cannot meet the threshold requirements established in *Stanaway*.

Defendant did not articulate facts indicating that the therapist even asked suggestive questions in therapy, let alone that the therapy records contain information to support this theory. As a result, defendant's allegations are insufficiently particularized to demonstrate that AF's records "likely" contained material information to the defense and warranted an in camera review. *Stanaway*, 446 Mich at 677. Additionally, even without the benefit of the therapy records, defendant knew that AF was asked repeatedly about defendant, and those instances of questioning were presented to the jury during her cross-examination. In fact, on his cross-examination of AF, defense counsel spent extensive time demonstrating just how many times AF had been questioned, how suggestive those questions may have been, and why she had changed her story. Because defense counsel spent so much time during trial presenting the extent of questioning AF was subjected to, any additional details about such questioning that her therapy records may have contained was cumulative and therefore not "material information necessary to the defense." *Stanaway*, 446 Mich at 677. Defendant's generalized assertions cannot meet the threshold requirements established in *Stanaway* and instead reflect a mere desire to review the records as a fishing expedition to see what may turn up .

Counsel is not required to bring a meritless motion. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defense counsel did not unreasonably fail to move for an in camera review of AF's therapy records because any such motion would have been unsuccessful. *Ericksen*, 288 Mich App at 192. As a result, defense counsel's failure to move for an in camera review did not fall below an objective standard of reasonableness or, therefore, constitute ineffective assistance of counsel.

## B. EXPERT WITNESS

Defendant argues that he was denied effective assistance of counsel because defense counsel failed to consult with or retain an expert witness to explain forensic interviewing procedures to the jury and the ways in which those procedures were not followed in this case.

Defendant analogizes the facts of this case to *Trakhtenberg*, 493 Mich at 38. In *Trakhtenberg*, the Court found that, "[p]erhaps most importantly, defense counsel stated at the *Ginther* hearing that she chose not to consult any witnesses or obtain additional evidence *before* she decided to pursue a defense strategy for which she concluded that no further investigation was necessary." *Trakhtenberg*, 493 Mich at 54 (emphasis in original). In the present case there is no record evidence that defense counsel failed to consult with an expert, or made his decision not to retain an expert before deciding on a trial strategy that excluded expert testimony.

Failing to retain an expert does not always cause counsel's performance to fall below an objective standard of reasonableness. In this case, AF testified about defendant's sexual abuse at trial. The content of the forensic interviews conducted at CARE House were not admitted into evidence, nor did the prosecution retain an expert to testify about forensic interviewing and buttress AF's credibility. Instead, forensic interviewing was only mentioned at trial in defense

counsel's opening statement, on his cross-examination of SF, and in defense counsel's closing argument. In light of the facts that the prosecution did not present a competing expert and counsel extensively cross-examined AF, and because counsel's performance is not measured with the benefit of hindsight, *People v Payne*, 285 Mich App 181, 188, 190; 774 NW2d 714 (2009), it was not unreasonable for defense counsel to choose not to call an expert to testify about how children's testimony regarding sexual abuse may be influenced by the adults around them. Defendant cannot show that any failure on the part of defense counsel to retain or call expert witnesses fell below an objective standard of reasonableness.

Counsel's failure to investigate AF's therapy records and failure to retain an expert witness on the effect of repeated and suggestive questioning on children and the subsequent impact on the child's credibility did not fall below an objective standard of reasonableness and defendant was not denied the effective assistance of counsel.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-10-